**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
12/27/2022
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ASSURANCE WIRELESS, USA, LP, f/k/a VIRGIN MOBILE USA, LP, | No. 83089-9-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | |
| Respondent. | |

BIRK, J. — Assurance Wireless is a telecommunications provider that participates in the Federal Communications Commission (FCC) "Lifeline" program, which is intended to aid qualifying low-income consumers in obtaining telecommunications services. The Washington State Department of Revenue (Department) assessed retailing business and occupation (B&O) taxes and sales taxes on funds Assurance received from the Universal Service Administrative Company (USAC) for its participation in the Lifeline program. Assurance appealed this assessment to the Board of Tax Appeals (Board), asserting that its receipt of funds from USAC is not associated with any retail sale as defined under Washington tax law, and, alternatively, that the taxes are unconstitutional because they fall on the federal government or an instrumentality of the federal government. The Board granted summary judgment to the Department. We agree there are no genuine issues of material fact and affirm the Board's determinations that a taxable

retail sale occurred and that the tax does not fall on the federal government or an instrumentality of the federal government.

I

Assurance Wireless USA LP is a telecommunications company that provides wireless telecommunications services to consumers in Washington and elsewhere, including Lifeline services. Lifeline is a federal program that is designed to make telecommunication services more affordable for qualifying low-income consumers. The FCC prescribes the minimum services that an eligible carrier must offer and regulates other aspects of the program, including consumer eligibility requirements. The Assurance Lifeline plan provides eligible consumers a free wireless phone and free monthly services that consist of a fixed amount of voice minutes, text messages, and data. A subscriber can purchase additional voice or text services if they desire a greater level of service than the baseline monthly plan.

The Lifeline program is administered by the USAC. USAC is "a not-for-profit, independently, wholly-owned subsidiary of the National Exchange Carrier Association, Inc." The record discloses that according to its website, "USAC is not a federal government agency or department or a government controlled corporation." USAC collects funds from telecommunications carriers, which are required by federal law to make contributions to the Universal Service Fund (USF) supporting the Lifeline program and other universal service programs. See 47 U.S.C. § 254(d) ("Every telecommunications carrier that provides interstate telecommunications services shall contribute, on an equitable and

nondiscriminatory basis, to the specific, predictable, and sufficient mechanisms established by the [FCC] to preserve and advance universal service."). USAC administers the collection and disbursement of the USF funds. Id. The Congressional Budget Office treats USF funds as federal funds, though they are not federally-appropriated. 47 U.S.C. § 254(d); 47 C.F.R. § 54.706; Tex. Office of Pub. Util. Couns. v. Fed. Commc'ns Comm'n, 183 F.3d 393, 427 (5th Cir. 1999); In re LAN Tamers, Inc., 329 F.3d 204, 206 (1st Cir. 2003).

To receive reimbursements, Assurance must file FCC form 497. The form requires Lifeline providers to report the number of Lifeline subscribers as of the first day of the month. Assurance receives a reimbursement of $9.25[1] for each non-Tribal subscriber[2] who has used the service within the last 30 days, a reimbursement rate established by federal law. 47 C.F.R. § 54.403(a)(1). To receive Lifeline funds, Assurance must attest:

> I certify that my company will pass through the full amount of all Non-Tribal and Tribal federal Lifeline support for which it seeks reimbursement, as well as all applicable intrastate Lifeline support, to all qualifying low-income subscribers by *an equivalent reduction in the subscriber's monthly bill* for voice telephony service, or by offering a *pre-paid wireless plan* that includes a set number of minutes of use per month.

---

[1] This was the rate set by FCC regulation at the time of the proceedings before the Board. 47 C.F.R. § 54.403(a)(1). In its response in opposition to the Department's motion for summary judgment, Assurance notes that "Prior to September 2012, the reimbursement price was not fixed for all subscribers, and [Assurance] was receiving reimbursements of $9.79 per subscriber."

[2] Telecommunications companies receive reimbursement of $25.00 for each Tribal subscriber. 47 C.F.R. § 54.403(a)(3). Assurance does not provide Lifeline service for Washington Tribal residents.

(Emphasis added.)  Assurance implements a business rule to exclude 2 percent of the total number of its Lifeline recipients in each state when submitting its attestation, to ensure that it does not claim more Lifeline funds than it is entitled to receive.

The Department audited Assurance's excise tax records for the period of January 2010 through December 2016 and issued assessments for B&O taxes, retail sales taxes, and interest.  Assurance paid the assessments and sought refunds of $3,895,840 in taxes together with associated penalties and interest. Assurance appealed to the Department's Administrative Review and Hearings Division for review of the assessment.  The Department denied Assurance's petitions and upheld the assessments.  Assurance timely appealed the assessments to the Board.

The Department moved for summary judgment, arguing that the issues raised by Assurance were questions of law, not fact, and that the assessments should be upheld.  The Board granted the Department's motion for summary judgment.  The Board concluded that "the items that [Assurance] claims are material facts in dispute are actually legal arguments, and that there [were] no material facts in dispute."  The Board concluded that "[t]here is no preemption that prohibits the state from applying its generally applicable retail sales tax to the sale of telecommunication services to consumers in Washington, even if the buyer is a third party."  Assurance appeals, arguing that the evidence created "questions of fact" concerning whether there is any taxable "retail sale" involved in providing Lifeline plans to consumers.  Alternately, Assurance argues Lifeline program funds

No. 83089-9-I/5

are immune from state tax under the supremacy clause of the United States Constitution.

II

This court reviews an order granting summary judgment de novo. Young v. Key Pharms., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). We review the evidence in the light most favorable to the nonmoving party, here, Assurance. Id. Summary judgment is appropriate where the written record shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Blaise v. Underwood, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). A material fact is one upon which the outcome of the litigation depends. Haines-Marchel v. Dep't of Corr., 183 Wn. App. 655, 662, 334 P.3d 99 (2014). In a summary judgment motion, the moving party bears the initial burden of showing the absence of any issue of material fact. LaPlanie v. State, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). To defeat a motion for summary judgment, the nonmoving party must, by affidavits or as otherwise provided in CR 56, set forth specific facts establishing a genuine issue for trial. Young, 112 Wn.2d at 225-26.

Here, the parties do not dispute the material facts or the reasonable inferences that can be drawn from them. There is no dispute about the process through which Lifeline services are provided and the Lifeline funds are received. Assurance bears the burden to prove that it is entitled to the tax refund it is claiming. Everi Payments, Inc. v. Dep't of Revenue, 6 Wn. App. 2d 580, 590, 432 P.3d 411 (2018). The issue before us is whether the Board correctly determined that Assurance had not met its burden to prove it is entitled a tax refund, which is

5

a question of law that we review de novo. <u>See</u> <u>Bravern Residential II, LLC v. Dep't of Revenue</u>, 183 Wn. App. 769, 776, 334 P.3d 1182 (2014). Statutory interpretation is a question of law that we review de novo. <u>Ekelmann v. City of Poulsbo</u>, 22 Wn. App. 2d 798, 807, 513 P.3d 840 (2022).

A

A person[3] making retail sales in Washington is subject to retailing B&O tax and is also required to collect retail sales tax, unless an exemption applies. RCW 82.04.220; RCW 82.08.020, .050(1). The retailing B&O tax is imposed on the seller as a percentage of a business's gross receipts, and the retail sales tax is a percentage of the selling price on each retail sale. RCW 82.04.250; RCW 82.08.020. The retail sales tax must be paid by the buyer to the seller, and the seller must collect the full amount of tax payable. RCW 82.08.050. If the seller fails to collect the tax, whether as the result of the seller's own acts or the result of acts or conditions beyond the seller's control, the seller is personally liable to the state for the amount of the tax. RCW 82.08.050(3).

A "retail sale" is the sale of tangible personal property to all persons, unless it is a sale that qualifies for an exception. RCW 82.04.050(1)(a). Under RCW 82.04.050(5), retail sales include providing "telecommunications service." "Telecommunications service" is defined as "the electronic transmission, conveyance, or routing of voice, data, audio, video, or other information or signals to a point, or between or among points." RCW 82.04.065(27). "Prepaid wireless

---

[3] RCW 82.04.030 defines "person" to include any "firm, copartnership, joint venture, club, company . . . limited liability company, association . . . or any group of individuals acting as a unit."

calling service" is a telecommunication service that "provides the right to use mobile wireless service as well as other nontelecommunication services . . . which must be paid for in advance and that is sold in predetermined units or dollars of which the number declines with use in a known amount." RCW 82.04.065(22). Both mobile wireless services and prepaid wireless calling services are considered telecommunications services. WAC 458-20-245(103)(a) (Table A).

The "gross proceeds" of a retail sale includes the "value proceeding or accruing from the sale of tangible personal property . . . and/or for other services." RCW 82.04.070. "Selling price" for purposes of the sales tax includes "consideration received by the seller from a third party" if four conditions are met: (i) the seller actually receives consideration from a party other than the purchaser, and the consideration is directly related to a price reduction or discount on the sale, (ii) the seller has an obligation to pass the price reduction or discount through to the purchaser, (iii) the amount of the consideration attributable to the sale is fixed and determinable by the seller at the time of the sale of the item to the purchaser, and (iv) one of three additional criteria is met. RCW 82.08.010(1)(c)(i)-(iv). Relevant here, the fourth element is met when the purchaser identifies himself or herself to the seller as a member of a group or organization entitled to a price reduction or discount. RCW 82.08.010(1)(c)(iv)(B).

Assurance argues that there are two separate transactions that facilitate its providing Lifeline services and that neither of these transactions is a "sale" under Washington law. Assurance argues that, in what it calls "business activity 1," it provides free services to Lifeline consumers and, because Assurance receives no

7

consideration from the consumer, there is no sale at that stage. Assurance then argues that, in what it calls "business activity 2," "[d]ivorced from the consumer's enrollment and use of the prepaid telecommunication services" Assurance receives Lifeline payments from USAC as "an incentive to encourage participation in Lifeline." Presumably because there is no service provided to any person in the receipt of funds that Assurance describes as "business activity 2," Assurance argues it also is not a sale.

The language of FCC form 497, required under federal law, shows there is a retail sale occurring under Washington law, and undermines Assurance's assertion that funds are an incentive unrelated to the consumer's use of Lifeline services. Assurance certifies on FCC form 497 that it will pass through the full amount of Lifeline funds received either by reducing a qualifying subscriber's bill, or by providing a prepaid wireless plan. Congress expected that Lifeline funds would be applied to the consumer's bill, which presupposes a sale, or toward providing a prepaid wireless plan, which also falls under the definition of a retail sale according to Washington law. RCW 82.04.050(5), RCW 82.04.065(21). Federal law describes the Lifeline program as a "retail service offering" that is provided to qualifying low-income consumers. 47 C.F.R. § 54.401(a)(1). The funds Assurance receives from USAC are based directly on the number of qualifying Lifeline plans that Assurance certifies it is providing. See Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n, 983 F.3d 498, 503 (D.C. Cir. 2020) (explaining that under both the monthly fee-for-service structure and the prepaid plan structure carriers "receive Lifeline support payments for their active Lifeline subscribers.").

Instead of there being two unrelated activities, the amount of Lifeline funding Assurance receives is directly tied to the number of Lifeline plans it provides. That Assurance may voluntarily reduce this number, and that there is some time period between the time when Assurance provides Lifeline service and the time it receives funds from USAC do not, separately or together, attenuate the connection between these two "activities" such that there is no retail sale as defined by Washington tax law.

The Department argues that Assurance is selling telecommunications services in a three party transaction, rather than engaging in two nonsale business activities. It argues Assurance is the seller, USAC is the buyer, and the user of lifeline services is the consumer. Washington law recognizes that a retail sale may occur when the seller receives consideration from a third party. RCW 82.08.010(1)(c)(i)-(iv). In Murray v. State, the court explained that the "buyer" is the person "legally obligated to pay the seller in any transaction." 62 Wn.2d 619, 624, 384 P.2d 337 (1963). In AARO Medical Supplies, Inc. v. Department of Revenue, the court stated that " 'consumers' " and " 'buyers' " are not statutory equivalents in Washington. 132 Wn. App. 709, 718 n.5, 132 P.3d 1143 (2006) (quoting Murray, 62 Wn.2d at 623). In AARO, vendors sold durable medical equipment to Medicare beneficiaries and were paid by the federal government via assignment. Id. at 711-12. The vendors did not collect sales tax on the transactions. Id. at 712. The court held that "for the purposes of RCW 82.08.050, the Medicare beneficiaries, not the federal government, [were] the buyers. Because RCW 82.08.050 require[d] a vendor to remit sales tax to the Department,

9

regardless of whether the vendor collect[ed] the sales tax from the purchaser," summary judgment in favor of the Department was appropriate. AARO, 132 Wn. App. at 711.

Here, there is no disagreement about whether Assurance is providing telecommunications services to Washington consumers. Under Washington law, providing telecommunications services, like those provided through the Lifeline program, is a retail sale. RCW 82.04.050(5), RCW 82.04.065(22). The statutory conditions for a retail sale based on third party consideration are likewise met. See RCW 82.08.010(1)(c)(i)-(iv). Assurance received consideration from a party other than the Washington consumer and attested in its FCC filing to the consideration being related to the services provided. Assurance had an obligation to—and represented to the FCC that it would—pass through the Lifeline funds to qualifying consumers. The amount Assurance was eligible to receive for providing each lifeline plan, $9.25, was fixed and determinable at the time the plan was provided to the consumer. And the transaction depended on the consumers identifying themselves as members of a group entitled to receive Lifeline plans because they met specific criteria as low-income consumers.

Because we conclude that Assurance's providing mobile wireless service together with receiving Lifeline funds from USAC is a taxable retail sale, we do not need to reach the more specific question whether the transaction qualifies as a taxable sale of "prepaid wireless calling service" as defined in state law. Before the Board, the Department argued Assurance's Lifeline plans were prepaid plans. In its opening brief, Assurance describes its Lifeline recipients as receiving "free

10

prepaid telecommunication services." In its reply, Assurance argues that its Lifeline recipients nevertheless do not receive "prepaid wireless calling service" as defined under RCW 82.04.065(22), because it receives funds from USAC after, not before, it provides services. Assurance's internal accounting is at odds with both characterizations, because Assurance uses accrual accounting to recognize Lifeline revenue at the time it provides the service. Nevertheless, Assurance certifies to the FCC in form 497 that it is passing through to its customers the "full amount" for which it seeks "reimbursement" from USAC, either by reducing the subscriber's bill or by offering a prepaid plan. Whether Assurance seeks "reimbursement" based on its having provided service for which the recipient incurred a "bill," or based on its having provided the recipient a prepaid plan, in either case it has provided the recipient "telecommunications service" under RCW 82.04.050(5) and received associated "reimbursement." We affirm the Board's conclusion that this was a taxable retail sale.

B

Assurance argues the Board's decision violates the United States Constitution, "because it seeks to impose tax on the federal government or an instrumentality thereof, in violation of the . . . Supremacy Clause." U.S. CONST. art. VI, § 2. To establish that a state tax assessment violates the supremacy clause, Assurance must show that the tax falls directly on the federal government or an instrumentality of the federal government. Assurance argues that tax immunity is triggered, because if there is a retail sale, the buyer is the FCC, a federal agency, or USAC, which Assurance asserts is an instrumentality of the federal government.

11

The Board concluded the buyer is USAC, and concluded that USAC is not an instrumentality of the federal government having tax immunity. On appeal, the Department argues that the buyer is either the consumer or USAC and that, because neither is entitled to tax immunity, it is not necessary to determine which is the buyer. We agree with the Department.

States are constitutionally prohibited from directly taxing the federal government, or its instrumentalities. United States v. New Mexico, 455 U.S. 720, 733, 102 S. Ct. 1373, 71 L. Ed. 2d 580 (1982). Taxes are not prohibited if they merely have an effect on the United States, even if the economic burden is on the federal government. Id. "[S]o long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory." Washington v. United States., 460 U.S. 536, 540, 103 S. Ct. 1344, 75 L. Ed. 2d 264 (1983). Assurance does not argue that the taxes at issue are discriminatory.

In United States v. New Mexico, the federal government argued that its contractors were entitled to tax immunity because they drew checks directly on federal funds. 455 U.S. at 737. The Supreme Court rejected this argument, stating "we cannot believe that an immunity of constitutional stature rests on such technical considerations." Id. The Supreme Court outlined a narrow approach to governmental tax immunity, which "accords with competing constitutional imperatives, by giving full range to each sovereign's tax authority." Id. at 735-36. The court stated "tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as

12

separate entities, at least insofar as the activity being taxed is concerned." Id. at 735. A finding of constitutional tax immunity "requires something more than the invocation of traditional agency notions: to resist the State's taxing power, a private taxpayer must actually 'stand in the government's shoes.' " Id. at 736 (quoting City of Detroit v. Murray Corp., 355 U.S. 4489, 503, 78 S. Ct. 486, 2 L. Ed. 2d 460 (1958)). "[A]bsent congressional action, we have emphasized that the States' power to tax can be denied under only 'the clearest constitutional mandate.' " Id. at 738 (quoting Michelin Tire Corp. v. Wages, 423 U.S. 276, 293, 96 S. Ct. 535, 46 L. Ed. 2d 495 (1976)).

The parties do not dispute that the FCC would be exempt from direct state taxation. Assurance argues that because the FCC maintains authority over the Lifeline program, the Lifeline funds are immune from sales tax. However, Assurance falls short of showing that the legal incidence of the challenged tax falls on the FCC. It is undisputed that the funds are paid by the wireless carriers into the USF, and disbursed from the fund directly to Lifeline carriers, including Assurance. Assurance has not shown that the FCC at any point incurs the "legal obligation to pay the tax." Everi Payments, 6 Wn. App. 2d at 591. We conclude that the FCC is not the buyer of Lifeline services.

Assurance argues that tax immunity would be triggered if USAC is the buyer, characterizing USAC as "a payment processor or claims agent" for the FCC, and arguing that USAC is an instrumentality of the federal government. Relying on Lewis v. United States, 680 F.2d 1239, 1242 (9th Cir. 1982), Assurance argues that the federal government's tax immunity should be liberally applied, and that the

13

test for determining whether an entity is a federal instrumentality protected from state taxation is " 'whether the entity performs an important governmental function.' " In <u>Lewis</u>, the court held that a federal reserve bank was not a federal agency for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b). <u>Id.</u> at 1241-42. The court distinguished case law holding that the federal reserve banks were federal instrumentalities for some purposes, including immunity from state taxation. <u>Id.</u> at 1242. The court reasoned that the test for determining whether an entity is a federal instrumentality for state tax immunity is "very broad," "liberally applied," and turns on whether the entity "performs an important governmental function." <u>Id.</u> In <u>Lewis</u>, that function was the federal reserve banks' role in implementing national fiscal policy. <u>Id.</u>

<u>Lewis</u> does not support Assurance's argument that USAC enjoys federal tax immunity. <u>Lewis</u> was published only a few weeks after <u>United States v. New Mexico</u>, in which the Supreme Court clarified that constitutional tax immunity derived from the supremacy clause is neither very broad nor liberally applied, but requires a "narrow approach" giving "full range to each sovereign's taxing authority." 455 U.S. at 735-36. <u>Lewis</u> does not mention the constitutional standard established by the Supreme Court only a few days before its publication. This court is bound to follow <u>United States v. New Mexico</u>, but there is a further distinction between <u>Lewis</u> and the present case. The statements in <u>Lewis</u> on which Assurance relies concerned express congressional exemptions from state tax, rather than immunity strictly under the supremacy clause. <u>Lewis</u> applied the statutory terms of the Federal Tort Claims Act to determine if the federal reserve

14

bank was a covered agency. Its comments about the broad scope of tax immunity did not refer to the constitutional principle of tax immunity, but rather to decisions that had found tax immunity for federal land banks based on an express statutory exemption from state tax established by Congress. 680 F.2d at 1242-43 (citing Fed. Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 99, 62 S. Ct. 1, 86 L. Ed. 65 (1941) ("The unqualified term 'taxation' used in section 26 clearly encompasses within its scope a sales tax such as the instant one."); Fed. Land Bank of St. Louis v. Priddy, 295 U.S. 229, 235, 55 S. Ct. 705, 79 L. Ed. 1408 (1935) ("There is thus a specific grant of immunity from taxation.")). Assurance does not point to any statutory exemption from state taxation, but relies exclusively on the constitutional principle derived from the supremacy clause. To the extent Lewis referred to "broad" and "liberally applied" immunities from state taxation, it referred to cases discussing only an express statutory exemption, which is absent here. In contrast, United States v. New Mexico determines the applicability of the constitutional immunity from taxation on which Assurance relies.

Under United States v. New Mexico, Assurance has not demonstrated that USAC "stands in the shoes" of the federal government as an instrumentality. Assurance invokes traditional notions of agency when it argues that because the FCC has delegated functions to USAC and because USAC operates under the authority of the federal government, USAC is an instrumentality of the FCC for the purposes of state tax immunity. But United States v. New Mexico holds that this is insufficient to establish tax immunity. 455 U.S. at 736.

15

USAC does not describe itself as an instrumentality of the federal government. It is uncontested that USAC is a wholly-owned subsidiary of a trade association that has been given the responsibility to collect, pool, and disburse the USF funds contributed by carriers. See In re Incomnet, Inc. v. Post-Confirmation Comm. of Unsecured Creditors of Incomnet Commc'ns Corp., 463 F.3d 1064, 1067 (9th Cir. 2006). While USAC must comply with FCC regulations in carrying out those responsibilities, the record shows that USAC has expressed publicly on its website that it is "not a federal government agency or department or a government controlled corporation." While the manner in which USAC holds itself out is not dispositive, it demonstrates USAC's intent to operate independently from the federal government and demonstrates that USAC does not "stand in the shoes" of the federal government.

Quoting 47 U.S.C. § 254(f), (j), Assurance argues that Congress intended to shelter Lifeline from state taxation, stating, "Congress explicitly recognized the importance of preserving federal immunity over Lifeline by prohibiting states from adopting regulations 'inconsistent with the Commission's rules to preserve and advance universal service' or doing anything that 'shall affect the collection, distribution, or administration of the Lifeline Assistance Program.' " But Assurance overlooks that 47 U.S.C. § 254(f) goes on to say, "A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal services within that State . . . that do not rely on or burden Federal universal service support mechanisms." In the same statute, subsection (j) reads, "Nothing in this section shall affect the collection, distribution, or administration of

16

the Lifeline Assistance Program provided for by the Commission under [other regulations]." 47 U.S.C. § 254 (j). When read in its entirety, this statute does not support Assurance's argument because it does not contain a clear statement of preemption of state tax.

If Congress had intended to establish USAC as an instrumentality of the federal government, it could have followed a statutory route for doing so. It did not. The Government Corporation Control Act of 1945 provides that "[a]n agency may establish or acquire a corporation to act as an agency only by or under a law of the United States specifically authorizing the action." 31 U.S.C. § 9102. Congress has defined "agency" for purposes of Title 31 of the United States Code as a "department, agency, or instrumentality of the United States Government." 31 U.S.C. § 101. Assurance has not shown a clear congressional mandate that USAC or USF funds be exempt from state taxation.

As a result, the tax immunity of the federal government would not be triggered if USAC is the buyer. No party argues tax immunity would be triggered if the consumer is the buyer. AARO explained that RCW 82.05.050 requires a vendor to remit sales tax to the Department, regardless of whether the vendor collects the sales tax from the purchaser. 132 Wn. App. at 711. In AARO, where the two possible purchasers were either Washington consumers or the federal government, it was necessary to identify the buyer because one of the two possible buyers was immune. See id. at 720. It is not so here. Of the potential buyers remaining after the FCC has been eliminated (USAC or Washington consumers), neither is the federal government or an instrumentality of the federal government

17

and neither is immune from sales tax.  We affirm the Board's conclusion that the federal government's tax immunity is not triggered.

III

We affirm the Board's conclusions that a retail sale occurred when Assurance provided Lifeline plans to Washington consumers and received Lifeline funds, and that these sales are not exempt from tax by virtue of the buyer being the federal government or an instrumentality thereof.

Affirmed.

_Birk, J._

WE CONCUR:

_Mann, J._    _Dwyer, J._